AMERICAN FOREST RESOURCE
COUNCIL, et al., Appellants

v.

Daniel M. ASHE, Director, U.S.
Fish And Wildlife Service,
et al., Appellees.

No. 13–5302.

United States Court of Appeals,
District of Columbia Circuit.

Feb. 27, 2015.

Mark C. Rutzick, Mark C. Rutzick, Inc., Oak Hill, VA, for Appellants.

Nina Catherine Robertson, DOJ Appellate Counsel, Meredith Lisa Flax, Sam Hirsch, Andrew C. Mergen, David C. Shilton, U.S. Department of Justice, Washington, DC, for Appellees.

Before BROWN, Circuit Judge, and SILBERMAN and SENTELLE, Senior Circuit Judges.

### JUDGMENT

PER CURIAM.

This case was considered on the record from the United States District Court for the District of Columbia and on the briefs of the parties. See Fed. R.App. P. 34(a)(2); D.C.Cir. R. 34(j). The court has afforded the issues full consideration and

has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). It is

**ORDERED and ADJUDGED** that the judgments of the District Court dated March 30, 2013 and September 5, 2013, be affirmed for the reasons stated in the memorandum accompanying this judgment.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing *en banc. See* FED. R. APP. P. 41(b); D.C.Cir. R. 41.

## MEMORANDUM

Appellants attack the Fish and Wildlife Service's denial of their petition to remove the "distinct population segment" of the marbled murrelet inhabiting California, Oregon, and Washington from the Endangered Species Act's threatened species list. We affirm the district court's well-reasoned opinion. *Am. Forest Res. Council v. Ashe,* 946 F.Supp.2d 1 (D.D.C.2013). We agree that the Service's determination is not contrary to agency precedent or otherwise arbitrary and capricious.

The defined term "species" includes "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532(16). To determine whether a distinct population segment of a species exists (and therefore qualifies as threatened or endangered under the Act), the Service must find the population segment is: (1) *discrete* in relation to the

remainder of its species; (2) *significant* to the species to which it belongs; and (3) would, if treated as if it were a species, qualify as endangered or threatened. Policy Regarding the Recognition of Distinct Vertebrate Population Segments Under the Endangered Species Act ("DPS Policy"), 61 Fed.Reg. 4,722 (Feb. 7, 1996). Only the first two criteria are raised on appeal.

Appellants face an uphill battle to advance their claim that the Service misapplied the DPS Policy to the tri-state murrelet population because "the agency's interpretation of its own regulations must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *In re Polar Bear Endangered Species Act Listing & Section 4(d) Rule Litig.,* 709 F.3d 1, 11 (D.C.Cir. 2013). Rather than quibble with the district court's opinion—upholding the determination that delisting is not warranted as the product of reasoned decision-making, Appellants switch tack and argue that the Service's finding is arbitrary and capricious because it departs from "established precedent" without explanation. Appellants walk through a selective number of listing decisions for different species [1] where the Service purportedly announced a method or policy that it later departed from in violation of the Administrative Procedure Act. They argue that we should vacate and remand the "not warranted" status review if any single one of the sub-components of the non-exhaustive sub-factors enumerated in the "significant" and "discrete" requirements is flawed. But either none of the quoted language Appellants cite stands for the claimed proposition, or there are other

---

1. Only one decision is factually analogous: the kittlitz murrelet. 12–Month Finding on Petition to List Kittlitz's Murrelet, 78 Fed. Reg. 61,764 (Oct. 3, 2013). But that decision is not relevant because it was issued four months *after* the Service reaffirmed the DPS determination for the marbled murrelet.

countervailing decisions that render the claimed "policy" nonexistent. Appellants also misapprehend the notion of "precedent," and seize on dicta rather than a guiding principle in the form of a holding. In short, none of the cited precedents rises to the level of establishing a practice or policy from which the marbled murrelet decision departs. Of course, the Service is bound by methodologies and policies established in prior determinations to the extent that such methodologies and policies are not factually distinguishable on a case-by-case basis. But the Service did not in this instance depart from any such precedent.

Under the DPS Policy, a population can be *discrete* if it is "delimited by international governmental boundaries within which differences in control of exploitation, management of habitat, conservation status, or regulatory mechanisms exist that are significant in light of section 4(a)(1)(D) of the Act [the inadequacy of existing regulatory mechanisms]." 61 Fed.Reg. at 4,625. The Service identified significant differences in management of habitat, conservation status, and regulatory mechanisms between the U.S. and Canada, any one of which is sufficient to support a discreteness finding. *See* 12–Month Finding on Petition to Delist the Marbled Murrelet, 75 Fed.Reg. 3,424, 3,429 (Jan. 21, 2010) (population is discrete under DPS Policy if "one or more of the discreteness criteria" are met). The discreteness factors can be analytically interrelated—here, the differences in management of habitat are implicit by reason of differences in regulatory mechanisms.

The Service determined that there were significant regulatory differences between the U.S. and Canada. Canada classifies the murrelet as a "threatened" species pursuant to its federal endangered species legislation, the Species At Risk Act. The Service compared existing Canadian law to applicable U.S. law that would govern if the marbled murrelet were delisted. It concluded that, without the additional protection of the Endangered Species Act, Canadian law better protects the murrelet. The Service said that Canadian law prohibits incidental killing of murrelets by fishermen while U.S. law in Washington State does not, Canadian law protects murrelets and nest sites significantly better than the U.S., and maximum fines are higher and jail time is longer in Canada. Appellants launch a veritable battery of attacks against the Service's findings, some of which are frivolous. We dispose of Appellants' arguments in turn.

First, Appellants asserted below that the Service overlooked the Migratory Bird Treaty Act's indirect protection of murrelets in Washington State from bycatch, an argument to which the Service failed to respond. Appellants argue this oversight requires vacatur and remand of the entire decision. We agree with Judge Bates "[t]hat FWS may have misstated this minor difference does not render its overall conclusion arbitrary and capricious." *Am. Forest Res. Council,* 946 F.Supp.2d at 19; *cf. Consol. Edison Co. of New York, Inc. v. FERC,* 823 F.2d 630, 641–42 (D.C.Cir. 1987) ("[W]e decide to remand the policy for reconsideration because of the nature and implications of the 'bad' reason given by the Commission. It is not some minor misstatement of law or fact that can be passed over as an unfortunate lapse. Rather, it reflects a pervasive frame of mind ... about a crucial problem."). Second, Appellants argue that the Service was required to consider the National Forest Management Act and Federal Land Policy and Management Act in its survey of existing U.S. law. But the murrelet decision considered the Northwest Forest Plan, which is the vehicle the Forest Service and Bureau of Land Management use to imple-

ment the two allegedly absent statutes. In any event, as Judge Bates noted, the two statutes were mentioned by name— and thereby considered—elsewhere in the administrative record. This is enough. Third, Appellants assert that the Service departed from established practice in its textual comparison of Canadian law to existing U.S. law because it failed to examine the practical effects of any differences between the statutory regimes. Appellants' selective quotations that purport to establish such a policy do no such thing when placed in context because none of the quoted language derives from a discreteness finding made pursuant to the DPS Policy. *See, e.g.,* 12–Month Finding on a Petition to List the Northern Mexican Gartersnake, 71 Fed.Reg. 56,228, 56,233 (Sept. 26, 2006) (declining to list the snake as a DPS on the grounds it was not "significant"). Appellants' derivative arguments similarly lack merit, as they have not pointed to an established policy requiring the Service to examine the practical effects of regulatory differences.

Separately, the Service relied on four factors to find differences in *conservation status* were significant: (1) the murrelet population in the U.S. is one-third the size of that of Canada; (2) the productivity of murrelets is lower in the U.S. than Canada; (3) the loss of murrelet habitat (old-growth forest) in recent years has been more severe in the U.S. than Canada; and (4) the absolute amount of murrelet nesting habitat is smaller in the U.S. than Canada. Judge Bates determined that the Service's reasoning was clear enough— "The U.S. population of murrelets, even with the Act's protections, is smaller, less productive and losing suitable habitat faster than the Canadian population of murrelets." 946 F.Supp.2d at 16. Appellants now argue that the DPS Policy required the Service to link conservation status to the inadequacy of existing regulatory

mechanisms. *But see Nat'l Ass'n of Home Builders v. Norton,* 340 F.3d 835, 843 (9th Cir.2003) (upholding a discreteness determination on the basis of conservation status without mention of the inadequacy of existing regulatory mechanisms). But, as the Service points out, the Status Review *did* state differences in conservation status would likely be exacerbated if the murrelet no longer had Endangered Species Act protections. 75 Fed.Reg. at 3,427. In any event, Appellants fail to identify a single instance where the Service previously announced such a rule.

Once the Service has determined that a population segment is discrete, the DPS Policy directs it to consider its biological and ecological *significance* to its overall taxon. Such consideration "may include, but is not limited to" four disjunctive factors. The Service relied on two bases for its finding of significance: (1) evidence that the loss of the DPS would result in a significant gap in the range of a taxon; and (2) genetic characteristics of the tri-state population make it important to the taxon. Any one of these considerations is sufficient. Because we uphold the Service's significant gap determination, we do not reach its second stated rationale.

The Service based its "significant gap" finding on the following evidence: the tri-state area accounts for roughly 18% of the total coastal distribution of the species, the tri-state population is peripheral to the species because it is located at the southern-most extent of the range, and the tri-state area contains an ecologically distinct forest system (coastal Redwoods).

Appellants assert that Service precedent holds it may only consider a population's peripheral location if the population developed distinctive biological characteristics in adapting to local conditions. Rather than assess the relevance and validity of

Appellants' citations on a case-by-case basis, we simply note that there are six other DPS determinations where the Service concluded that a peripheral population was significant *without* reference to biological adaptation. So the Service does not depart from any established "precedent." Similarly, Appellants argue that the fact that the murrelet inhabits an ecologically distinct ecosystem is meaningless because there is no concomitant "biological distinctiveness." And of course, Service precedent has announced such a policy. This is not so. *Cf.* Final Rule to List the Columbia Basin DPS of the Pygmy Rabbit, 68 Fed.Reg. 10,388 (Mar. 5, 2003) (concluding a population is significant because it inhabits an ecologically unique area without evidence of biological adaptiveness). Finally, Appellants assert that the Service's finding that 18% of a species range is significant departed from precedent because it failed to state explicitly that loss of geographic area would be a "substantial reduction" of the subspecies' range. Appellants point to

no case *holding* that the agency has to invoke this magic phrase. *Cf. Home Builders,* 340 F.3d at 848 (observing a 5% loss of a geographic range did not amount to a substantial reduction of a taxon's range and holding that the Service's significant gap finding lacked a rational basis). And of course, the Service has elsewhere supported a DPS finding that a comparable range would be significant, without explicitly stating the synonymous terms "substantial reduction." *See, e.g.,* 12–Month Finding for a Petition to List the Yellow-billed Cuckoo, 66 Fed.Reg. 38,611, 38,622 (July 25, 2001) (loss of "more than 20 percent" of the range would result in a significant gap).